UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:<br><br>KIDS ONLY II OF LAFAYETTE, LLC,<br><br>Debtor. | Case No. 15-51354<br><br>Chapter 11 |
| In re:<br><br>KIDS ONLY III OF LAFAYETTE, LLC,<br><br>Debtor. | Case No. 15-51355<br><br>Chapter 11 |

**PLAN OF LIQUIDATION**

COMES NOW, creditor RREF II PEBP-LA, LLC (the "Plan Proponent"), and pursuant to Section 1121(c) of the United States Bankruptcy Code, files this Plan of Reorganization for the debtors, KIDS ONLY II OF LAFAYETTE, LLC, and KIDS ONLY III OF LAFAYETTE, LLC (Collectively the "Debtors").

**ARTICLE I
SUMMARY**

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Debtors by substantively consolidating their estates, and liquidating all assets.

This Plan provides for three classes of secured claims and one class of unsecured claims. Unsecured creditors holding allowed claims are expected to receive distributions of 100% of their allowed claims.

{N3269878.1}

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.).**

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

| | | |
|---|---|---|
| 2.01 | Class 1. | All allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)). |
| 2.02 | Class 2. | All claims of RREF II PEBP-LA, LLC, which are cross collateralized and secured by the daycare building and land located at 700 La Neuville Road, Lafayette, Louisiana (the "700 Property") owned by KIDS ONLY II OF LAFAYETTE, LLC, and the daycare building and land located at 224 Julian Circle, Lafayette, Louisiana (the "224 Property") owned by KIDS ONLY III OF LAFAYETTE, LLC. |
| 2.03 | Class 3. | The secured claim owed to the Internal Revenue Service by KIDS ONLY II OF LAFAYETTE, LLC and secured by, inter alia, the 700 Property. |
| 2.04 | Class 4. | The secured claim owed to the Internal Revenue Service by KIDS ONLY III OF LAFAYETTE, LLC and secured by, inter alia, the 224 Property. |
| 2.05 | Class 5. | All unsecured claims allowed under § 502 of the Code, including claims which may arise from any deficiencies. |
| 2.06 | Class 6. | The allowed equity interests in the Debtors |

# ARTICLE III
# TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01 Unclassified Claims. Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02 Administrative Expense Claims. Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03 Priority Tax Claims. Each holder of a priority tax claim will be paid in regular monthly installments the total value of such claim as of the effective date of the Plan, equal to the allowed amount of such claim over a period of one year from the effective date of the Plan.

3.04 United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

# ARTICLE IV
# TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - Priority Claims | Unimpaired | Class 1 consists of those governmental units with tax claims entitled to priority under Section 507 of the Bankruptcy Code, or secured claims for ad valorem taxes. Holders of allowed Class 1 claims shall be paid 100% of their allowed claims at the closing of sales of the 224 Property and 700 Property with any shortfall to be paid by the Proponent. |

3

| Class 2, 3, and 4 – Secured Claim of the Internal Revenue Service and RREF II PEBP-LA, LLC, | Impaired | Classes 2, 3, and 4 include secured claims of the Internal Revenue Service and RREF II PEBP-LA, LLC, secured by either the 700 Property or 224 Property. All such claims shall be deemed cross collateralized by both properties. Class 2 shall have priority and shall be paid in full prior to any distributions on Class 3 or 4. Such claims in Classes 3 and 4 shall be paid in pro rata (expected to be paid in full) at the closing of sales of the 224 Property and 700 Property. |
|---|---|---|
| Class 5 - General Unsecured Creditors | Impaired | The holders of Class 5 claims will receive distributions under the Plan of 100% of their allowed claims. The Court shall set a claims bar date prior to the closing of the sale of the 700 Property and 224 Property, and all such claims shall be paid in full at the closing, unless an objection has been filed to such claims or there is insufficient funds from the sales proceeds to fund such claims in full, in which case they shall be paid pro rata. In the event that there are any disputed claims at such time, cash equivalent to the asserted amount of such claim shall be placed in escrow, and shall be distributed upon the adjudication of such claim. |
| Class 6 – Equity Interests in the Debtors | Unimpaired | The Equity Interests in the Debtors shall be unimpaired. Any proceeds or property not distributed under the Plan shall vest in the Debtors. |

# ARTICLE V
# ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01 <u>Disputed Claim</u>. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtors has scheduled such claim as disputed, contingent, or unliquidated.

4

5.02 <u>Delay of Distribution on a Disputed Claim</u>. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03 <u>Settlement of Disputed Claims</u>. The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01 Assumed Executory Contracts and Unexpired Leases.

The Debtors will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed before the date of the order confirming this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

The Plan will be funded by the liquidation of the 700 Property and 224 Property. The Debtors shall turn over any cash on hand on the effective Date (estimated at approximately $15,000.00).

<u>Marketing Plan</u>: Lamar P. Fisher and Fisher Auction Company ("Auctioneer") together with a headquarter broker of the Auctioneer's choosing ("Local Broker") shall implement an extensive Accelerated Marketing Plan to advertise the sale of the 700 Property and 224 Property to conduct the Auction sale thereof (the "Marketing Plan").

<u>Participation Requirements</u>: Unless otherwise ordered by the Court, in order to participate in the bidding process, an interested bidder must (a person who timely complies with these requirements shall be a "Qualified Bidder"): a. No later than October 25, 2016, at 5:00 p.m. (or such other date as set forth by the Court) which is two (2) business days prior to the scheduled

Auction (the "Bid Deadline"): i. wire into the trust account of the auctioneer's counsel, Marshall Socarras Grant, PL (the "Attorney in Fact"), an escrow deposit of $25,000.00.

Participation in Auction: Provided that there are Qualified Bidders, the Auctioneer will conduct the Auction. The Auction shall take place at the 700 Property on October 27, 2016 at 11:00 a.m. (or such other date as set forth by the Court). The location of the Auction is subject to change to other times or places so long as the Attorney in Fact shall notify all Qualified Bidders and it is reasonably required by the circumstances.

Auction Procedures: All bids made by Qualified Bidders are subject to a buyer's premium equal to 6% of the bid. All Qualified Bidders shall be entitled to make any subsequent bids. Subsequent bids shall be in increments of $10,000. The Auctioneer may reduce or increase the incremental bidding at his discretion. Bidding at the Auction shall continue until such time as the Auctioneer, in the exercise of its business judgment, determines that the highest and best bid (the "Successful Bid") has been submitted by a Qualified Bidder (the "Successful Bidder"). The Auctioneer reserves the right to modify the bidding increments or announce at the Auction additional procedural rules for conducting the Auction in the exercise of its business judgment. The Auctioneer may employ such devices as "high bidders choice," or other similar techniques to maximize the bid price. Depending on the outcome of the Auction, different Successful Bidders and Back-Up-Bidders may be chosen for the properties separately.

Successful Bid: Immediately after the conclusion of the Auction, the Successful Bidder and Back Up Bidder (as defined below) shall fully execute an asset purchase agreement which shall include a purchase price, shall be subject to approval by this Court, and shall have no due diligence or financing contingencies. The Proponent shall submit the Successful Bid for approval

to the Bankruptcy Court at the Sale Hearing, on October 27, 2016 (or such other date as set forth by the Court). At the Sale Hearing, the Plan Proponent intends to seek approval from the Court for the next highest or best bid (the "Back Up Bid"), which approval shall authorize the Attorney in Fact to consummate the Back Up Bid immediately (within five days) after a default under the Successful Bid without further order of the Court. The Court shall enter an order appointing Joe M. Grant, as an attorney in fact for the Debtors and their Estates, and authorizing Joe M. Grant to execute any such documents. Promptly following the conclusion of the Sale Hearing, the Attorney in Fact shall return the deposits to each unsuccessful Qualified Bidder (except the Back Up Bidder whose deposit shall either be returned upon the closing of the sale to the Successful Bidder or applied to the purchase price in a closing with such Back Up Bidder).

Additional Deposit. Within 24 hours of becoming the Successful Bidder, the Successful Bidder shall deposit the additional sum of 10% of the Successful Bid (the "Additional Deposit") into the trust account of Marshall Socarras Grant, P.L. The Additional Deposit shall be held without interest and shall be applied against the purchase price at closing.

Closing: Closing shall take place within twenty (20) calendar days of entry of the Sale Order but not sooner than 15 days, or when the Sale Order becomes final, whichever is later. The Successful Bidder(s) must be prepared and must in fact consummate the purchase of the respective properties in accordance with the Purchase Agreement. Upon the failure of the Successful Bidder to consummate the closing of the purchase of either property because of a breach or failure on the part of the Successful Bidder, then the Proponent may elect in its business judgment the next highest or otherwise best Qualified Bidder to be the Successful

Bidder (the "Back Up Bidder"). The ultimate purchaser, upon closing, whether the Successful Bidder or the Back Up Bidder, shall be referred to herein as the "Purchaser".

As Is Where Is: Each property will be sold in its "As Is", "Where Is" condition and with all faults, with no guarantees or warranties express or implied. All personal property owned by the Debtors in either location shall be sold along with the real property, or may be sold by the Auctioneer in any commercially reasonable manner.

No Conditions or Contingencies: Each property will be sold without any financing or other conditions, other than marketable title.

Credit Bid: All secured creditors ("Secured Creditor") shall be entitled to credit bid the full value of its secured claim., but shall be required to satisfy any liens subject to such claim at closing. However, if a Secured Creditor is the Successful Bidder at the Auction via credit bid, it shall be responsible for paying a buyer's premium of 3% notwithstanding any contrary provision herein.

Sale Free and Clear of Liens, Claims and Conditions: Each property will be sold free and clear of all liens, claims and encumbrances, but subject to: comprehensive land use plans, zoning, restrictions, prohibitions and other requirements imposed by governmental authority; restrictions and matters appearing on the plat or otherwise common to the subdivision; outstanding oil, gas and mineral rights of record without right of entry; unplatted public utility easements of record; taxes for year of Closing and subsequent years; and assumed mortgages and purchase money mortgages, if any; provided, that there exists at Closing no violation of the foregoing.

Real Estate Commissions: The Auctioneer, Local Broker, and the buyer's duly registered broker, are the only parties that shall be entitled to a commission in connection with this transaction. The Auctioneer and Local Broker will be entitled to a commission of not more than 6% of the purchase price, which shall be paid from the 6% buyer's premium, as set forth in their retention application. The buyer's registered broker (if any) will be entitled to a commission of 2% of the purchase price, which is included in the 6% buyer's premium which shall reduce the portion allowed to the Auctioneer and Local Broker to 4%. The Purchaser shall indemnify and hold the estate harmless for any other claimed real estate commissions.

Objections: Objections, if any, to the Sale, must (a) be in writing; (b) set forth the nature of the objector's claims against or interest in the Debtors' estate, and the basis for the objection and the specific grounds therefore; (c) comply with the Bankruptcy Rules and the Local Bankruptcy Rules for and all Orders of this Court; (d) be electronically filed with the Court in this case no later than 4:30 pm on October 20, 2016 (or such other date as set forth by the Court)(the "Objection Deadline"). Only timely filed and served responses, objections, or other pleadings will be considered by this Court at the Sale Hearing. The failure of any person or entity to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Procedures Motion, the Sale or the consummation and performance of the Purchase Agreement.

Fee of Attorney in Fact: The services of the Attorney in Fact shall be paid for by the bankruptcy estate in the flat-fee amount of $15,000.00 and shall be awarded an allowed administrative claim in such amount. In the event and to the extent that there exists any Disputed Claims at the time of the closings, the Attorney in Fact shall maintain any amounts from the sale

proceeds sufficient to pay such claims in its trust account pending a final determination of such claims. The Attorney in Fact shall have neither the right, nor the obligation, to initiate any claim objections, and shall be released of any duties, to the fullest extent allowable by law, other than to (1) execute sale documents on behalf of the Debtors and the Estates; (2) distribute funds pursuant to final orders of the Court; and to (3) safeguard any deposits contemplated in the bid procedures. To the extent that there are insufficient unencumbered proceeds from the sales of the 700 Property and 224 Property to pay the fee claim of the Attorney in Fact, such claim shall be paid directly by the Plan Proponent.

## ARTICLE VIII
## GENERAL PROVISIONS

8.01 Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

8.02 Effective Date of Plan. The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the order of confirmation. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

8.03 Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

10

{N3269878.1}

15-51355 - #80  File 08/02/16  Enter 08/02/16 17:18:21  Main Document  Pg 10 of 11

8.04 Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05 Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06 Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Georgia govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE IX
## DISCHARGE

9.01. Discharge. As this is a liquidation plan, the Debtors shall not receive a discharge.

## ARTICLE X
## DEFAULTS

10.01. The confirmation of this plan shall not cure any defaults.

Respectfully submitted:

*/s/ Laura F. Ashley*
LAURA F. ASHLEY
(LA Bar No. 32820)
Jones Walker LLP
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone (504) 582-8000
lashley@joneswalker.com
*Attorney for RREF II PEBP-LA, LLC*