UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA

In re:                                          Case No. 15-51355

KIDS ONLY III OF LAFAYETTE, LLC,                Chapter 11

        Debtor.

**DISCLOSURE STATEMENT FOR RREF II PEBP-LA, LLC's**
**PLAN OF LIQUIDATION**

## I.      INTRODUCTION

This is the small business chapter 11 disclosure statement (the "Disclosure Statement")
for RREF II PEBP-LA, LLC's Combined Plan of Liquidation (the "Plan") for the debtor in the
instant case, KIDS ONLY III OF LAFAYETTE, LLC, and debtor in the case entitled *KIDS
ONLY II OF LAFAYETTE, LLC*, Case No. 15-51354, U.S. Bankruptcy Court, Western District
of Louisiana (Collectively the "Debtors") small business chapter 11 case.   This Disclosure
Statement contains information about the Debtors and describes the Plan filed by RREF II
PEBP-LA, LLC (the "Proponent").    A full copy of the Plan is attached to this Disclosure
Statement as **Exhibit A**.  Your rights may be affected.  You should read the Plan and this
Disclosure Statement carefully and discuss them with your attorney.  If you do not have an
attorney, you may wish to consult one.

Under the Plan, all creditors are expected to receive 100% of their allowed claims.

### A.      PURPOSE OF THIS DOCUMENT

This Disclosure Statement describes:

- The Debtors and significant events during the bankruptcy case,

- How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why the Proponent believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

### 1.    Time and Place of the Hearing to Finally Approve This Disclosure Statement and Confirm the Plan

The hearing at which the Court will determine whether to finally approve this Disclosure Statement and confirm the Plan will be held on _____ at _____am/pm, at the United States Bankruptcy Court, 214 Jefferson Street, Lafayette, LA 70501.

### 2.    Deadline For Voting to Accept or Reject the Plan

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to [insert address]. *See* section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by [_____] or it will not be counted.

{N3270471.1}

3. **Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan**

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon the Proponent, the Debtors, and the United States Trustee by [_____].

4. **Identity of Person to Contact for More Information**

If you want additional information about the Plan, you should contact [Laura F. Ashley of Jones Walker LLP, 201 St. Charles Ave. Ste. 5100, New Orleans, LA 70170].

C. **Disclaimer**

**The Court has conditionally approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. The Court's approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan. Objections to the adequacy of this Disclosure Statement may be filed until _____.**

II. **BACKGROUND**

A. **Description and History of the Debtors' Business**

The Debtors is a limited liability company providing childcare services. The Debtors filed these cases in response to mounting tax and secured liability.

B. **Insiders of the Debtors**

Because the Plan expects to pay all holders of allowed claims 100% of such claims, no investigation as to the identity of the Debtors' insiders has been made by the Proponent.

{N3270471.1}

### C.    Management of the Debtors Before and During the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtors(collectively the "Managers") were Richard Scelfo, and individuals unknown to the Proponent.

The Managers of the Debtors during the Debtor's chapter 11 case have been the same.

The Managers of the Debtors shall remain the Managers of the Debtor, however Joe M. Grant shall be appointed as an attorney in fact for the purposes of signing transfer documents to effect the liquidation of the assets of the Debtors.

### D.    Significant Events During the Bankruptcy Case

The only significant event in these bankruptcy cases was the inability of the Debtors to pay their secured creditor in full by July 14, as required under an agreed order, resulting in stay relief to the secured creditor on July 14, 2016 and making the possibility of reorganization unlikely.

### E.    Projected Recovery of Avoidable Transfers

The Proponent does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

### F.    Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, any party in interest reserves the right to object to claims.    Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.    The procedures for resolving disputed claims are set forth in Article V of the Plan.

{N3270471.1}

### G. Current and Historical Financial Conditions

The identity and fair market value of the estates' assets are listed in **Exhibit B**, the combined schedules A and B filed by the Debtors.

The most recent post-petition operating report filed since the commencement of the Debtors' bankruptcy cases are set forth in **Exhibit C**.

## III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A. What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B. Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has not placed the following claims in any class:

#### 1. Administrative Expenses

Administrative expenses are costs or expenses of administering the Debtors' chapter 11 cases which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtors in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative

{N3270471.1}

expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtors estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition | $0 | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | $0 | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| Professional Fees, as approved by the Court. | $0 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerks' Office Fees | $0 | Paid in full on the effective date of the |
| Allowed administrative expense of Marshall Socarras Grant, P.L., attorney to the auctioneer and attorney in fact for the sale of the liquidated | $15,000 | Paid in full first from the Debtor's cash on hand at the effective date and second at the closing of the real property sales |
| Office of the U.S. Trustee Fees | $0 | Paid in full on the effective date of the Plan. |
| TOTAL | $15,000.00 | |

## 2.      Priority Tax Claims

Priority tax claims are unsecured income, employment, and other taxes described by

§ 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) priority tax claim agrees

6

otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

| Class 1 - Priority Claims<br><br>Lafayette Sheriff $14,738.65 owed by Kids Only II of Lafayette, LLC<br><br>Louisiana Workforce Commission $13,519.91 owed by Kids Only II of Lafayette, LLC | Unimpaired | Class 1 consists of those governmental units with tax claims entitled to priority under Section 507 of the Bankruptcy Code, or secured claims for ad valorem taxes. Holders of allowed Class 1 claims shall be paid 100% of their allowed claims at the closing of sales of the 224 Property and 700 Property. Any shortfall shall be funded by the Plan Proponent. |

## C. Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### 1. Classes of Secured Claims

Allowed Secured Claims are claims secured by property of the Debtors bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following lists all classes containing Debtors secured prepetition claims and their proposed treatment under the Plan:

{N3270471.1}

| | |
|---|---|
| Class 2. | All claims of RREF II PEBP-LA, LLC, which are cross collateralized and secured by the Daycare building and land located at 700 La Neuville Road, Lafayette, Louisiana (the "700 Property") owned by KIDS ONLY II OF LAFAYETTE, LLC, and the Daycare building and land located at 224 Julian Circle, Lafayette, Louisiana (the "224 Property") owned by KIDS ONLY III OF LAFAYETTE, LLC. All such claims shall be deemed cross collateralized by both properties. At the closing of sales of the 224 Property and 700 Property, such claim is expected to be paid in full. Such claims are impaired to the extent that there may be (but there is not expected to be) insufficient proceeds from the sales to pay such claims in full. |
| Class 3. | The secured claim in the amount of $64,383.60 owed to the Internal Revenue Service by KIDS ONLY II OF LAFAYETTE, LLC and secured by, inter alia, the 700 Property. All such claims shall be deemed cross collateralized by both properties. At the closing of sales of the 224 Property and 700 Property, such claim is expected to be paid in full. Such claims are impaired to the extent that there may be (but there is not expected to be) insufficient proceeds from the sales to pay such claims in full. |
| Class 4. | The secured claim in the amount of $144,063.27 owed to the Internal Revenue Service by KIDS ONLY III OF LAFAYETTE, LLC and secured by, inter alia, the 224 Property. All such claims shall be deemed cross collateralized by both properties. At the closing of sales of the 224 Property and 700 Property, such claim shall is expected to be paid in full. Such claims are impaired to the extent that there may be (but there is not expected to be) insufficient proceeds from the sales to pay such claims in full. |

## 2. Classes of Priority Unsecured Claims

Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

The Proponent does not believe any claims exist under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code.

{N3270471.1}

### 3. General Unsecured Claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class which contains general unsecured claims against the Debtor:

| Class 5 - General Unsecured Creditors | Impaired | The holders of Class 5 claims will receive expected distributions under the Plan of 100% of their allowed claims. The Court shall set a claims bar date prior to the closing of the sale of the 700 Property and 224 Property, and all such claims shall be paid pro rata at the closing, unless an objection has been filed to such claims. In the event that there are any disputed claims at such time, cash equivalent to the pro rata amount of such claim shall be placed in escrow, and shall be distributed upon the adjudication of such claim. |
|---|---|---|

### 4. Classes of Equity Interest Holders

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtors is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of equity interest holders:

9

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 6 | Equity interest holders | Unimpaired | The Equity Interests in the Debtors shall be unimpaired. Any proceeds or property not distributed under the Plan shall vest in the Debtors. |

**D.      Means of Implementing the Plan**

The Plan will be funded by the liquidation of the 700 Property and 224 Property. The Debtors shall turn over any cash on hand on the effective Date (estimated at approximately $15,000.00).

Marketing Plan:  Lamar P. Fisher and Fisher Auction Company ("Auctioneer") together with a headquarter broker of the Auctioneer's choosing ("Local Broker") shall implement an extensive Accelerated Marketing Plan to advertise the sale of the 700 Property and 224 Property to conduct the Auction sale thereof (the "Marketing Plan").

Participation Requirements:  Unless otherwise ordered by the Court, in order to participate in the bidding process, an interested bidder must (a person who timely complies with these requirements shall be a "Qualified Bidder"): a.  No later than October 25, 2016 at 5:00 p.m. (or such other date as set forth by the Court) which is two (2) business days prior to the scheduled Auction (the "Bid Deadline"):  i.  wire into the trust account of the auctioneer's counsel, Marshall Socarras Grant, PL (the "Attorney in Fact"), an escrow deposit of $25,000.00.

Participation in Auction:  Provided that there are Qualified Bidders, the Auctioneer will conduct the Auction. The Auction shall take place at the 700 Property on October 27, 2016 at

{N3270471.1}

11:00 a.m. (or such other date as set forth by the Court).  The location of the Auction is subject to change to other times or places so long as the Attorney in Fact shall notify all Qualified Bidders and it is reasonably required by the circumstances.

Auction Procedures:  All bids made by Qualified Bidders are subject to a buyer's premium equal to 6% of the bid.  All Qualified Bidders shall be entitled to make any subsequent bids. Subsequent bids shall be in increments of $10,000.  The Auctioneer may reduce or increase the incremental bidding at his discretion.  Bidding at the Auction shall continue until such time as the Auctioneer, in the exercise of its business judgment, determines that the highest and best bid (the "Successful Bid") has been submitted by a Qualified Bidder (the "Successful Bidder").   The Auctioneer reserves the right to modify the bidding increments or announce at the Auction additional procedural rules for conducting the Auction in the exercise of its business judgment. The Auctioneer may employ such devices as "high bidders choice," or other similar techniques to maximize the bid price.  Depending on the outcome of the Auction, different Successful Bidders and Back-Up-Bidders may be chosen for the properties separately.

Successful Bid:  Immediately after the conclusion of the Auction, the Successful Bidder and Back Up Bidder (as defined below) shall fully execute an asset purchase agreement which shall include a purchase price, shall be subject to approval by this Court, and shall have no due diligence or financing contingencies.  The Proponent shall submit the Successful Bid for approval to the Bankruptcy Court at the Sale Hearing, on October 27, 2016 (or such other date as set forth by the Court).  At the Sale Hearing, the Plan Proponent intends to seek approval from the Court for the next highest or best bid (the "Back Up Bid"), which approval shall authorize the Attorney in Fact to consummate the Back Up Bid immediately (within five days) after a default under the

{N3270471.1}

Successful Bid without further order of the Court. The Court shall enter an order appointing Joe M. Grant, as an attorney in fact for the Debtors and their Estates, and authorizing Joe M. Grant to execute any such documents. Promptly following the conclusion of the Sale Hearing, the Attorney in Fact shall return the deposits to each unsuccessful Qualified Bidder (except the Back Up Bidder whose deposit shall either be returned upon the closing of the sale to the Successful Bidder or applied to the purchase price in a closing with such Back Up Bidder).

Additional Deposit. Within 24 hours of becoming the Successful Bidder, the Successful Bidder shall deposit the additional sum of 10% of the Successful Bid (the "Additional Deposit") into the trust account of Marshall Socarras Grant, P.L. The Additional Deposit shall be held without interest and shall be applied against the purchase price at closing.

Closing: Closing shall take place within twenty (20) calendar days of entry of the Sale Order but not sooner than 15 days, or when the Sale Order becomes final, whichever is later. The Successful Bidder(s) must be prepared and must in fact consummate the purchase of the respective properties in accordance with the Purchase Agreement. Upon the failure of the Successful Bidder to consummate the closing of the purchase of either property because of a breach or failure on the part of the Successful Bidder, then the Proponent may elect in its business judgment the next highest or otherwise best Qualified Bidder to be the Successful Bidder (the "Back Up Bidder"). The ultimate purchaser, upon closing, whether the Successful Bidder or the Back Up Bidder, shall be referred to herein as the "Purchaser".

As Is Where Is: Each property will be sold in its "As Is", "Where Is" condition and with all faults, with no guarantees or warranties express or implied. All personal property owned by the

12

Debtors in either location shall be sold along with the real property, or may be sold by the Auctioneer in any commercially reasonable manner.

No Conditions or Contingencies:  Each property will be sold without any financing or other conditions, other than marketable title.

Credit Bid:  All secured creditors ("Secured Creditor") shall be entitled to credit bid the full value of its secured claim., but shall be required to satisfy any liens subject to such claim at closing.  However, if a Secured Creditor is the Successful Bidder at the Auction via credit bid, it shall be responsible for paying a buyer's premium of 3% notwithstanding any contrary provision herein.

Sale Free and Clear of Liens:  Claims and Conditions: Each property will be sold free and clear of all liens, claims and encumbrances, but subject to: comprehensive land use plans, zoning, restrictions, prohibitions and other requirements imposed by governmental authority; restrictions and matters appearing on the plat or otherwise common to the subdivision; outstanding oil, gas and mineral rights of record without right of entry; unplatted public utility easements of record; taxes for year of Closing and subsequent years; and assumed mortgages and purchase money mortgages, if any; provided, that there exists at Closing no violation of the foregoing.

Real Estate Commissions:  The Auctioneer, Local Broker, and the buyer's duly registered broker, are the only parties that shall be entitled to a commission in connection with this transaction.  The Auctioneer and Local Broker will be entitled to a commission of not more than 6% of the purchase price, which shall be paid from the 6% buyer's premium, as set forth in their retention application.  The buyer's registered broker (if any) will be entitled to a commission of 2% of the purchase price, which is included in the 6% buyer's premium which shall reduce the

{N3270471.1}

portion allowed to the Auctioneer and Local Broker to 4%. The Purchaser shall indemnify and hold the estate harmless for any other claimed real estate commissions.

Objections: Objections, if any, to the Sale, must (a) be in writing; (b) set forth the nature of the objector's claims against or interest in the Debtors' estate, and the basis for the objection and the specific grounds therefore; (c) comply with the Bankruptcy Rules and the Local Bankruptcy Rules for and all Orders of this Court; (d) be electronically filed with the Court in this case no later than 4:30 pm on October 20, 2016 (or such other date as set forth by the Court)(the "Objection Deadline"). Only timely filed and served responses, objections, or other pleadings will be considered by this Court at the Sale Hearing. The failure of any person or entity to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Procedures Motion, the Sale or the consummation and performance of the Purchase Agreement.

Fee of Attorney in Fact: The services of the Attorney in Fact shall be paid for by the bankruptcy estate in the flat-fee amount of $15,000.00 and shall be awarded an allowed administrative claim in such amount. In the event and to the extent that there exists any Disputed Claims at the time of the closings, the Attorney in Fact shall maintain any amounts from the sale proceeds sufficient to pay such claims in its trust account pending a final determination of such claims. The Attorney in Fact shall have neither the right, nor the obligation, to initiate any claim objections, and shall be released of any duties, to the fullest extent allowable by law, other than to (1) execute sale documents on behalf of the Debtors and the Estates; (2) distribute funds pursuant to final orders of the Court; and to (3) safeguard any deposits contemplated in the bid procedures. To the extent that there are insufficient unencumbered proceeds from the sales of the 700 Property

14

and 224 Property to pay the fee claim of the Attorney in Fact, such claim shall be paid directly by the Plan Proponent.

### E.    Risk Factors

The proposed Plan's only real risk is that the sale of the properties will yield insufficient funds to satisfy all claims. But an adequate marketing effort should ensure that the price is to sufficient to pay all clams.

### F.    Executory Contracts and Unexpired Leases

The Plan, in Exhibit 5.1, lists all executory contracts and unexpired leases that the Debtors will assume under the Plan. Assumption means that the Debtors has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Exhibit 5.1 also lists how the Debtors will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Exhibit 5.1 will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

15

The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract is _____.  Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

### G. Tax Consequences of Plan

*Creditors, Debtors, and equity interest holders concerned with how the plan may affect their taxes liability should consult with their own accountants, attorneys, and/or other advisors.*  The Debtors are likely subject to flow-through- taxation to its principal(s) and should not experience any adverse tax consequences due to Plan confirmation.

### IV. Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.

The following are the anticipated tax consequences of the Plan:  [List the following general consequences as a minimum: (1)Tax consequences to the Debtors of the Plan; (2) General tax consequences on creditors of any discharge, and the general tax consequences of receipt of plan consideration after confirmation.]

### V. CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code.  These include the requirements that:    the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to  each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.    These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

16

## A.    Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.   A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and impaired.

In this case, the Plan Proponent believes that classes 2,3,4 and 5 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that classes 1 and 5 are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

### 1.    What Is an Allowed Claim or an Allowed Equity Interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtors  has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is  not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote  unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

{N3270471.1}

### 2. What Is an Impaired Claim or Impaired Equity Interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is impaired under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 1. The deadline for filing a proof of claim in this case is _____.

### 2. Who is Not Entitled to Vote

The holders of the following five types of claims and equity interests are not entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

- administrative expenses.

**Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.**

{N3270471.1}

### 3. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### B. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by a cram down on non-accepting classes, as discussed later in Section B.2.

### 1. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### 2. Treatment of Nonaccepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a 'cram down' plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the

{N3270471.1}

Code, does not 'discriminate unfairly,' and is 'fair and equitable' toward each impaired class that has not voted to accept the Plan.

**You should consult your own attorney if a 'cramdown' confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.**

C.      **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.   This Plan essentially provides a liquidation without the expense of a trustee, therefore each creditor will receive more or the same as it would in a chapter 7 liquidation.

D.      **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.   Because the Plan merely liquidates the Debtors' assets, the Plan is feasible per se.

VI.      **EFFECT OF CONFIRMATION OF PLAN**

A.      **No Discharge of Debtor**

No Discharge. In accordance with § 1141(d)(3) of the Code, the Debtors will not receive any discharge of debt in this bankruptcy case.

B.      **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

{N3270471.1}

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

### C.    Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

Respectfully submitted:

*/s/ Laura F. Ashley*
LAURA F. ASHLEY
(LA Bar No. 32820)
Jones Walker LLP
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone (504) 582-8000
lashley@joneswalker.com
*Attorney for RREF II PEBP-LA, LLC*

{N3270471.1}